288 So.2d 775

**HOUSING AUTHORITY of ROOSEVELT CITY, Alabama, a body corporate**

v.

**Edward R. NUNN et al.**

**SC 425.**

Supreme Court of Alabama.

Jan. 24, 1974.

Adams, Baker & Clemon and David H. Hood, Jr., Bessemer, for appellant.

Coretti, Newsom, Rogers & May, Birmingham, for appellees.

MADDOX, Justice.

Plaintiffs are property owners in the Cairo subdivision of Roosevelt City in Jefferson County. In a class suit they sought to enjoin the Roosevelt Housing Authority from applying for a Neighborhood Development Program (NDP) from the United States Department of Housing and Urban Development (HUD). While the suit was pending, HUD awarded a $214,000 grant to the Housing Authority for one year. The Housing Authority proposed to use the grant to rehabilitate certain homes, relocate four families and one business. No application has been submitted for subsequent years. After the grant was made, complainants amended their complaint and sought to enjoin the Housing Authority from implementing the grant program.

Trial was before the court without a jury. Much of the testimony was taken in open court. The trial judge also made a personal inspection of the premises.

The trial court found for the complainants, and the Housing Authority appealed.

The court found that the Cairo subdivision was not a blighted area, and that there was no need for an NDP in the area. The court enjoined the Housing Authority from taking further steps to implement the NDP and specifically enjoined the Housing Authority from condemning property in the Cairo subdivision. The Housing Authority was also enjoined from using any HUD grant money for implementation of the NDP.

The Housing Authority argues that the trial court cannot overturn its determination unless the Authority's action was found to be arbitrary or capricious.

The general rule seems to be that a finding by an appropriate body under the urban renewal and redevelopment laws that an area is a slum or blighted area is

legislative in character and must be upheld by the court unless it is shown that such finding is a result of arbitrary and capricious action or was induced by fraud or bad faith. Blankenship v. City of Decatur, 269 Ala. 670, 115 So.2d 459 (1959), and cases therein cited.

■ From the record it is obvious that the Housing Authority determined that the area met the statutory definition for a neighborhood development project, at least under Chapter 11 of Title 25, Code of Alabama 1940 (Recompiled 1958). The trial court determined the identical question to the contrary although it appears the court considered only Chapter 10 of Title 25. In its decree, the court found:

"The Court, in addition to considering the testimony which was taken ore tenus and the documentary evidence adduced at the trial has made a personal inspection of the real property located in Roosevelt City, Alabama, including particularly, the Cairo Subdivision thereof, having been familiar with the area prior to the institution of this action.

"The Court . . . specifically finds that there is no need for a Neighborhood Development Program in the Cairo Subdivision of Roosevelt City, Alabama. . . . [T]he Cairo Subdivision of Roosevelt City is not an area in which buildings or improvements by reason of dilapidation, obsolescence, overcrowding, faulty arrangement or design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or obsolete layout, or any combination of these or other factors which are detrimental to the safety, health, morals or welfare of the community."

As will be noted, the last paragraph of the quoted portion of the decree follows the exact wording of Title 25, § 97(1), *Power of housing authority to carry out redevelopment project,* which defines "blighted areas."

The Housing Authority says that the court has merely substituted its judgment for that of the Authority in determining the "need" for a development program in the Cairo subdivision.

The precise question then seems to be whether the finding by the trial court that the project did not meet the statutory definition constitutes a finding that the actions of the Authority were arbitrary and capricious. We think not. In the first place, the complainants did not allege in their complaint that the Housing Authority had acted arbitrarily and capriciously.[1]

Furthermore, there was evidence that there are no sanitary sewers in the Cairo subdivision. It was also shown by cross-examination of one of the appellees' principal witnesses that cesspools are located in

1. Pertinent provisions of the complaint are as follows:

"4. The Complainant's (sic) aver that the application submitted by the Housing Authority of the City of Roosevelt City contains numerous false and misleading statements and does not accurately depict the housing conditions in the Cairo Subdivision of Roosevelt City. The Complainants aver that the Cairo Subdivision is the most substantial subdivision in the entire City of Roosevelt City; that at least 40% of the homes in the area are well constructed brick homes, some of them ranging in price from $20,000 to $50,000. The Complainants further aver that the vast majority of the homes in the Cairo subdivision are in a good state of repair.

"5. Complainants aver that there are other areas of Roosevelt City which are in need of urban renewal, but that the Respondents have failed and refused and continued to fail and refuse to move the Neighborhood Development Program to some area in the City of Roosevelt City where the same would be warranted and needed.

"6. The Complainants aver that despite their protests and opposition to this unwanted *public assistance* pogram, (sic) the City of Roosevelt City and the Housing Authority of the City of Roosevelt City continue to move forward, seeking the approval of the Department of Housing and Urban Development to this unwanted, unwarranted and unneeded public assistance program."

Note: In *Blankenship,* 269 Ala. 670, 115 So. 2d 459 (1959), the complainants contended, according to the report of the case, that the city had acted "arbitrarily, unreasonably or capriciously."

the Cairo subdivision and that there are no sidewalks or gutters. Also, there are several abandoned homes in the area. There are several outhouses in the area. There was testimony that livestock is kept in the area by some residents.

As a matter of fact, appellees admit in their brief that there are instances of blight in the Cairo subdivision of Roosevelt City and particularly within the NDP area. While this concession seems to almost confess error, the appellees say that since the evidence showed that the *area* of the NDP, considered as a whole, was not a blighted area, then its selection was arbitrary and capricious, and that this is the finding made by the trial court, even though the precise words "arbitrary" or "capricious" were not used in the decree. We disagree.

The decree shows that the trial judge substituted his determination of need for the project for the determination made by the Authority. Furthermore, the trial court's finding of no need for the project was based upon the standard set out in Chapter 10, Title 25, Code of Alabama 1940, as amended, which deals with "Redevelopment Projects."

Appellant says the NDP involved here was an "Urban Renewal Project" under Chapter 11 of Title 25, Code of Alabama 1940, as amended, which authorizes "rehabilitation" of an area to *prevent the spread of blight.* They say their proposed project, which has been funded by HUD for one year, is a "rehabilitative" project, not a "clearance" project, although some clearance is proposed. Appellant's argument is persuasive.

It is obvious that Chapter 11 which deals with "urban renewal" contemplates a project that is materially different from the type project contemplated by Chapter 10. In general terms, Chapter 10 is designed to "clear" a slum; Chapter 11 is designed to "prevent" a slum by rehabilitation.

In any event, whether we deal with "clearance" or "prevention," a court cannot supervise the discretionary choices made by the Authority unless the Authority acts in an arbitrary or capricious manner.

In Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954), the Supreme Court said that it was not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area. The Court added:

" . . . Once the question of the public purpose has been decided, the *amount* and *character of land* to be taken for the project and the *need* for a *particular tract to complete the integrated plan rests in the discretion of the legislative branch.* . . . "

[Emphasis added.] 348 U.S. at 35–36, 75 S.Ct. at 104.

Since the complainants did not allege that the Housing Authority had acted arbitrarily or capriciously and since it is apparent that the finding by the trial court does not constitute a determination that the Authority so acted, the judgment of the trial court is due to be reversed and remanded.

Reversed and remanded.

HEFLIN, C. J., and MERRILL, HARWOOD and FAULKNER, JJ., concur.